BEFORE THE SECOND DIVISION, JUNE 13, 1951

**No. 55668.**—Waverly Sugar Company *v.* United States, petitions 6704–R and 6705–R (Pembina).

FORD, Judge: The two petitions listed above, seeking remission of additional duties incurred by reason of undervaluation on entry of certain parts for sugar machinery, were filed under the provisions of section 489 of the Tariff Act of 1930.

At the trial, counsel for petitioner stated that the importations in question cover filter press plates and frames, and inasmuch as both petitions cover the same merchandise, motion was made that the two petitions be consolidated for trial. There being no objection by counsel for respondent, the court granted the motion.

In view of the rather unusual circumstances surrounding the purchase, importation, and entry of this merchandise, a short statement of the facts at this point will perhaps give a clearer picture of this entire transaction.

It appears that petitioner was operating a beet-sugar plant in Waverly, Iowa, during the past war and decided to convert its plant so as to produce malt sirup from corn. In order to make this conversion, additional machinery was required. For this additional machinery, an order was placed for a portion of the machinery with the Vulcan Iron Works of Winnipeg, Canada. The Vulcan Iron Works accepted the order and agreed to ship the machinery and arrange the entry into the United States, with the petitioner paying the freight, car waybills, and charges.

The contract was that the Vulcan Iron Works themselves would take care of all formalities in bringing this equipment through the Customs and the reason for that is that we didn't know ourselves how to do it, so the obligation was on our supplier.

At the trial, the superintendent of petitioner testified that during his employment by petitioner he had occasion to order the filter press plates and frames the subject of this action; that "The price broken down per set, as there were six sets, was $4,459.50"; that he did not make any effort to ascertain the value of this merchandise in Canada for the reason that "This was an order being placed with their company as a tailor-made job; a job they were not accustomed to, and we took their submitted price"; that he did not "have any familiarity or knowledge of importing merchandise into the United States"; that he had no intention to defraud the revenue of the United States or to conceal any information from the appraiser.

I had personal charge of the purchasing, but not the entry; that was given to the supplier. They obligated themselves to import it into the United States.

The second witness was the vice president of petitioner, Mr. Walter R. Page, who testified that in a general way he was familiar with the details surrounding the purchase and importation of this machinery; that neither he nor his company had ever before had any experience in importing merchandise into the United States; that his connection with the importation of the involved merchandise was that "I paid the bills; I signed the checks."

CHIEF JUDGE OLIVER: Do I understand correctly that you received at your office private invoices aside from the consular invoices, of all these six sets?
WITNESS: Yes, only the private invoices.
CHIEF JUDGE OLIVER: They were sent directly to you by the supplier?
WITNESS: Yes.

\* \* \* \* \* \* \*

A. We paid the price of the private invoices by sending Vulcan Iron Works checks; as far as the duties were concerned, they were collected by the railroad on the freight bills.

The witness further testified that in connection with this importation he did not have any intent to defraud the United States of any revenue and that he did not withhold any information from the appraiser with respect to the value for this merchandise.

Q. Do you have any knowledge of the valuation used by the shipper in connection with the preparation of the consular invoices?—A. I took it for granted that the invoice prices were the same.

The facts in the record before us are wholly insufficient to justify the granting of any relief to the petitioner herein. The petitioner was in possession of private invoices which were never delivered to the appraiser. In fact, the first time petitioner was in contact with the customs officials at all was when it received notice of the additional duties, which it here seeks to have remitted. The fact that petitioner contracted with its supplier to take care of all formalities in bringing this merchandise through the customs, cannot relieve petitioner of its responsibility of entering or seeing that its merchandise was entered at the correct value. Neither can ignorance of our customs laws, which petitioner confessed, relieve it of this responsibility. *United States* v. *Edward H. Corrigan*, 38 C. C. P. A. (Customs) 26, C. A. D. 434, and *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392.

As was stated by our appellate court in *Kachurin Drug Co.* v. *United States*, 26 C. C. P. A. (Customs) 356, C. A. D. 41:

\* \* \* It is not a question as to whether the record affirmatively shows that appellant entered the goods in bad faith, but the question is whether or not it has met its burden of proving to the trial court that in making the entries such good faith was exercised as is required by the statute.

Counsel for respondent, in a well-written brief, makes the contention that the facts in this case are insufficient to justify any relief; that the importer should take some affirmative action in ascertaining the correct dutiable value of its merchandise; and that indifference, such as took place in this case, defeats favorable action under section 489 of the Tariff Act of 1930.

For the reasons stated the two petitions listed above are denied. Judgment will be rendered accordingly.